**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

MARC CLERMONT, on behalf of himself
and all others similarly situated,

   Plaintiff,

  v.

MONSTER WORLDWIDE, INC.,
SALVATORE IANNUZZI and
DAVID TRAPANI,

   Defendants

Docket No. 14-cv-14328-LTS

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

Monster Worldwide, Inc. terminated Plaintiff Marc Clermont on Thursday, April 3, 2014. At 4:26 pm on that same day, Monster initiated a direct deposit of all wages due to Clermont, in a gross amount totaling Twenty-Six Thousand Four Hundred One Dollars and Fifty Cents ($26,401.50). The next morning, Friday, April 4, 2014, after the electronic funds transfer process between Monster's bank and Plaintiff's bank had run its course, those funds were available for withdrawal from Plaintiff's bank account.

In an apogee of opportunism, Plaintiff now claims that Monster unlawfully detained his wages, based on the few hours that it took the parties' respective banks to transfer funds. He seeks to recover treble damages on his final pay and purports to assert a class action claim on behalf of the hundreds of other employees to whom Monster paid final wages in the same manner that it paid him.

Plaintiff's claims fail as a matter of law for two reasons. First, his theory requires a suspension of disbelief as to how funds transfer systems work and a view of the Massachusetts wage laws so draconian as to require payment to departing employees in the form of cash and

18664316v.3

coin currency in hand, even if their final pay amounts to tens of thousands of dollars.  Such a position is contrary to the plain language of the Wage Act and fails as a matter of law.

Second, even if the Wage Act required payment to departing employees in cash, as Plaintiff's theory suggests, his claim for treble damages would fail because Plaintiff admits that he was paid 100% of the compensation due him not later than April 4, 2014—more than six months before he commenced this lawsuit.  The Massachusetts Payment of Wages Act provides that a "defendant shall not set up as a defence a payment of wages after the bringing of a complaint[.]"  Mass. Gen. Laws ch. 149, §§ 148, 150 ("Wage Act").  The corollary of this rule is that payment of wages before the "bringing of a complaint" is a valid defense to a Wage Act claim, and case law confirms that an employer is not liable for treble damages under the statute if it pays all wages due to an employee before he or she files a lawsuit.  It is undisputed that Monster has done so here.

Accordingly, Plaintiff fails to plead any claim against Defendants upon which the Court can grant relief.  The Court should therefore dismiss Plaintiff's claims with prejudice.

## **FACTUAL BACKGROUND**[1]

On April 3, 2014, Monster discharged Plaintiff from his employment.  *Id.*, ¶7.  The same day—April 3, at 4:26 pm—Monster initiated a direct deposit of all wages due to Plaintiff into his bank account.  *See* Ex. A (ACH Transfer Record) (showing payments initiated on April 3, 2014, with a status of "approval pending").[2]  The gross amount of this payment was Twenty-Six

---

[1] For purposes of its Motion to Dismiss only, Defendants treat the factual allegations set forth in Plaintiff's Complaint as true.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2009).  Defendants reserve the right to contest those allegations should any part of this action survive their Motion to Dismiss.

[2] Because Plaintiff refers to "additional records of the defendants provided after plaintiff requested his personnel file," Am. Compl. ¶19, those records are incorporated into the operative complaint and appropriate for this Court to consider in addressing the present motion.  *See Giragosian v. Ryan*,  547 F.3d 59, 65 (1st Cir. 2008) (district court may consider documents incorporated by reference in the complaint); *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 20 (1st Cir. 2003) (same).

18664316v.3

Thousand Four Hundred One Dollars and Fifty Cents ($26,401.50).[3]  Am. Compl., ¶¶18-19.

Plaintiff does not claim that he was owed more than this amount.[4]

On April 4, Plaintiff's final pay was in his bank account and available for withdrawal.

Indeed, Plaintiff states in his Complaint:  "Such payments were received by Plaintiff on April 4,

2014."  *Id.*, ¶19 (emphasis added).

On October 22, 2014, more than six months after Plaintiff received all wages due him,

Plaintiff filed his lawsuit in Middlesex Superior Court.  Dkt. 1-1.  On October 30, 2014, Plaintiff

filed an Amended Complaint.  Dkt. 1-2.  Plaintiff purports to bring his Wage Act claims on

behalf of himself, on behalf of a putative class of Massachusetts employees whom Monster

discharged and did not pay in full on the day of discharge, and on behalf of another putative class

of Massachusetts employees who voluntarily left their employment with Monster and were not

paid in full on the next regular pay day.[5]  Am. Compl., ¶27.

## ARGUMENT

A court must dismiss a complaint where a plaintiff's factual allegations, accepted as true,

fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The plaintiff

"must plead enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2009).  Such "[f]actual allegations must be enough to raise a right

to relief above the speculative level."  *Id*. at 555.  Because the factual allegations in Plaintiff's

---

[3] The net amount of these payments—that is, the sum that Plaintiff actually received in his checking account after taxes and authorized withholdings—was Thirteen Thousand Five Hundred Eighty-Four Dollars and Twenty-Two Cents ($13,584.22).  *See* Ex. A.

[4] In fact, Plaintiff makes no allegation that he was owed any particular amount.  In that regard, he has failed provide factual allegations sufficient to plead a plausible claim against any of the Defendants, as *Twombly* and its progeny require.  *Pruell v. Caritas Christi*, 678 F.3d 10, 14 (1st Cir. 2012) (affirming dismissal of wage claim that failed to specify amount owed and grounds for entitlement to such sums).

[5] While Plaintiff refers to his second proposed class as a "Sub-Class," it is logically impossible for a group of employees who voluntarily resigned to be a subset of a class of employees who were fired.  As an employee who was fired, Plaintiff is not even a member of the proposed "Sub-Class" of resigning employees whom he aspires to represent.

3

Complaint plainly demonstrate that he is not entitled to relief under the Wage Act, the Court should dismiss those claims with prejudice.

## I.    Plaintiff's Claims Fail Because Monster Paid Him in Full on the Day of His Discharge

Plaintiff's claim that Monster unlawfully detained his wages fails as a matter of law because there is no dispute that Monster initiated transfer of all wages due to him on April 3, 2014, the day of his termination.  In doing so, Monster satisfied its obligations under the Wage Act.  Finding otherwise would be contrary to the plain language of the Wage Act and inconsistent with case law interpreting the events that constitute "payment" in the context of a funds transfer.

### A.    Monster's Transfer Order of April 3, 2014 Constitutes Payment under the Wage Act

On April 3, 2014, Monster instructed its bank, Fifth Third Bank, to transfer $13,584.22 to Plaintiff via direct deposit.  Ex. A.  A direct deposit transfer of funds involves a number of highly regulated transactions, beginning with an originator's transfer order, i.e., the instruction to pay the beneficiary's bank. *See Grabowski v. Bank of Boston*, 997 F. Supp. 111, 120-21 (D. Mass. 1997) (citation omitted).  Like any other account holder, Monster plays no role in the administration of transactions that occur after it issues a transfer order.  Instead, these transactions involve financial institutions and the Automated Clearing House (ACH), a clearing and settlement facility used to transfer funds among U.S. banks.

In issuing the order for Fifth Third Bank to transfer funds into Plaintiff's checking account on April 3, Monster did everything that it was legally authorized to do to pay Plaintiff via direct deposit.  Put differently, the technicalities of the electronic transfer process that occurred after issue of the transfer order were outside of Monster's control.  Once Monster initiated the transfer, it released the funds to Plaintiff without stipulations or conditions, fulfilling

4

its duty to pay him.  Indeed, in examining when a payment is effective, Massachusetts courts have noted that a party may satisfy its obligations even by making an unconditional <u>offer</u> to pay. *See Feygina v. Hallmark Health Sys., Inc.*, 2013 WL 3776929, at \*4 (Mass. Super. July 12, 2013) (to constitute a tender of payment, an offer must be made "without stipulations or conditions"); *Cumnock v. Inst. for Sav. in Newburyport,* 142 Mass. 342, 347(1886) ("The distinction between an unconditional offer to pay a debt, accompanied with a present ability and intention to pay, and a formal tender, is certainly technical, and the tendency of the law undoubtedly is to ignore technicalities which serve no useful purpose").  The machinations of the ACH process between Monster's bank and Plaintiff's bank that are the foundation of Plaintiff's Wage Act claim are exactly the sort of "technicalities which serve no useful purpose" that the courts have ignored.  That the funds were not available for withdrawal from Plaintiff's personal checking account until the morning after Monster initiated the transfer does not render the payment untimely.

**B.      The Wage Act Requires Only that Employers Pay all Wages Due; It Does Not Require that Employees Receive Wages in Immediately <u>Spendable Form</u>**

Plaintiff's contention that Monster's payment was untimely because he did not <u>receive</u> the funds until April 4 is contrary to the plain language of the Wage Act, which provides only that employees "be paid in full" on the day of discharge.  M.G.L. c. 149, § 148.  By conflating the date of payment with the date that the funds were available for withdrawal from his checking account, Plaintiff reads the statute to mean something other than what it says.

If the Legislature intended the Wage Act to require that employees <u>receive</u> all wages due on the day of discharge, it would have included language to that effect.  *See Cooney v. Compass Group Foodservice*, 69 Mass. App. Ct. 632, 638 (2007) (a court may not "add words to [a]

18664316v.3

Statute that the Legislature did not see fit to put there"). It did not. Nor did it prohibit methods of payment where same-day receipt of funds is unlikely.

If Plaintiff's interpretation were credited, employers would be limited to paying discharged employees in gold bars or suitcases full of cash. Any other method would similarly fall short of providing employees with their wages in immediately spendable form. Live checks, for example, would fare no better than direct deposit. Depending on when an employee deposits the check, and a number of intervening factors—including the internal rules of the financial institutions at issue—the check likely will not be cleared until the following business day, at the earliest. *See* CONSUMER FINANCIAL PROTECTION BUREAU, "How quickly can I get my money after I deposit a check?"[6] (noting that generally, "[i]f you deposit more than $200, you can access $200 the next business day, and the rest of the money the second business day[,]" and that it may take longer to access a deposit "over $5,000").

Further, the Wage Act's mandate that employees "be paid in full" on the day of discharge does not include the more specific requirement that non-cash payments be made in advance,[7] with instructions calculated to ensure that funds are credited to employees' bank accounts on the day of termination. "A wire [or electronic] transfer accomplishes a transfer of funds through a chain of contractual obligations[.]" *Sharpe v. F.D.I.C.*, 126 F.3d 1147, 1153 (9th Cir. 1997). Monster met its obligation to pay Plaintiff by issuing the transfer order on April 3. In doing so, Plaintiff was paid on his day of discharge, and his claim that Monster unlawfully detained his wages fails.

---

[6] Available at www.consumerfinance.gov/askcfpb/1023/how-quickly-can-i-get-money-after-i-deposit-check.html (last visited Dec. 11, 2014).

[7] Such a requirement would unduly burden employers and effectively prevent them from terminating employees with the immediacy necessary in a number of situations, such as when an employee is terminated for committing a serious infraction, including workplace violence, on the same day that the employer learns of the infraction.

18664316v.3

Indeed, the Massachusetts Superior Court has held that payment of wages need not coincide with the date that funds become available to an employee in an immediately spendable form. *See Dobin v. CIOview Corp.*, 2003 WL 22454602, at *7-8 (Mass. Super. Oct. 29, 2003). In *Dobin*, then-Superior Court Justice Ralph D. Gants found that payment as required by the Wage Act can be accomplished by tendering even checks that are post-dated to make funds available at a later time. *Id.* at *8. (noting that the employer "paid [the plaintiff] in full on December 13, 2000 with checks post-dated December 15, 2000.").

Unsurprisingly, Defendants' research reveals no decision addressing whether an employer's payment of wages via direct deposit is timely, where the funds at issue are not available from withdrawal from the employee's checking account until the next morning. However, in an analogous case dealing with payment of funds under a forbearance agreement, a court held that a borrower's issuing a transfer order on the date payment was due constituted "making payment," even though the funds were not received by the lender's bank until the following day. *See Singleton v. Fifth Third Bank*, 977 N.E.2d 958, 967-8 (Ind. Ct. App. 2012). The court in *Singleton* observed that the contract was silent as to the date that payment would be deemed made if using a funds transfer system, and absent language indicating that funds must be <u>received</u> on the payment due date, initiation of the transfer constituted timely payment.[8] *Id.*

The facts here are no different.   There is no dispute that Monster issued the transfer order on the day it terminated Plaintiff.  Its obligations under the Wage Act required nothing more. Accordingly, Plaintiff's claims must be dismissed.

---

[8] In reaching its decision, the *Singleton* court also considered language from the proceeding before the trial court, quoting the following language:  "Paid by to me means that you take the action to actually pay the money. It doesn't[ ] mean that the money is received. It doesn't mean that the money isn't held up by the federal wire transfer act. You took the action you had to take to pay the funds. . . . The fact that it was not receipted until the next morning had nothing to do with [Singleton]. It had to do with the actions that take place between the banks for the protection of the banks and had nothing to do with the fact that [Singleton] attempted to comply and did in fact comply with the terms of the contract."  *Singleton*, 977 N.E.2d at 961.

18664316v.3

## II.     Plaintiff's Claim for Treble Damages Fails Because He Received All Wages Due Before He Filed this Lawsuit

Even if the Court were to find that issuance of the transfer order on the day of Plaintiff's discharge did not constitute timely payment under the Wage Act, Plaintiff's claim for treble damages would fail because Plaintiff undisputedly received all wages due to him before he filed this lawsuit.  *See* Am. Compl., ¶¶ 18-19; Ex. A.  In relevant part, the Wage Act mandates that a "defendant shall not set up as a defence a payment of wages <u>after the bringing of a complaint</u> . . ."  Mass. Gen. Laws ch. 149, § 150 (emphasis added).  In view of Plaintiff's admission that he received all wages due to him on April 4—less than twenty-four hours after his termination, and more than six months before the filing of this lawsuit—Plaintiff's claim for treble damages fails.

In the only case to address the issue, the *Dobin* case discussed above, Justice Gants held that an employer was not liable for treble damages where it had paid the plaintiff the full amount of overdue wages to which she was entitled only hours before (but on the same day) she filed her lawsuit.  *Dobin v. CIOview Corp.*, 2003 WL 22454602, at *7-8 (Mass. Super. Oct. 29, 2003).  Because the employer's "commitment to pay had preceded the filing of the complaint[,]" Justice Gants held that plaintiff was precluded from recovering treble damages on such sums.  *See id.* Defendants' research reveals no case in which a court has accepted (or even seriously entertained) Plaintiff's extreme view of the statute's treble damages provision that would allow him to recover tens of thousands of dollars in compensation after having been paid his wages before filing this action.

This case presents an even starker scenario.  In *Dobin*, Justice Gants held that the employer's tender of checks—post-dated and negotiable only on a date that <u>followed</u> plaintiff's

8

18664316v.3

initiation of a lawsuit—barred plaintiff's recovery of treble damages. *Id.* at *8. By contrast, here, Monster's tender of payment was made a full six months before the lawsuit was filed.[9]

It is not without irony that in *Dobin*, Justice Gants considered payment of wages to be effective on a date prior to the date that plaintiff actually <u>received</u> the funds at issue, lending further support to Defendants' claim here that "paid" does not mean "received"—and that Monster's issuance of the transfer order on April 3 satisfied its obligation to pay Plaintiff in full on the day of his discharge.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's claims under the Wage Act with prejudice.

Respectfully submitted,

DEFENDANTS MONSTER WORLDWIDE, INC.,
SALVATORE IANNUZZI and
DAVID TRAPANI,

By their attorneys:

/s/ Barry J. Miller
Barry J. Miller (BBO # 661596)
bmiller@seyfarth.com
Anne S. Bider (BBO #682142)
abider@seyfarth.com
DATED: December 11, 2014    Seyfarth Shaw LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Fax: (617) 946-4801

---

[9] Even if the Court were to find that Monster paid Plaintiff one day late, the most that he would stand to recover is any interest he lost from the delay in obtaining this money. *See Dobin*, 2003 WL 22454602, at *7. Defendants calculate this amount to be less than Nine Dollars ($9.00) at an annual rate of 12% (the highest rate that could be applied by statute).

9

### CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of December, 2014, a copy of the foregoing document was filed electronically through the Court's ECF system and that Plaintiff's counsel is a registered user of the ECF system:

/s/ Anne S Bider
Anne S. Bider

18664316v.3