UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| MARC CLERMONT, individually and on behalf of all others similarly situated | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 14-14328-LTS |
| MONSTER WORLDWIDE, INC., SALVATORE IANNUZZI, and DAVID TRAPANI, | ) ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

April 6, 2015

SOROKIN, J.

I. INTRODUCTION

Defendant Monster employed Plaintiff. Am. Compl. ¶ 15. On April 3, 2014, Monster ("Defendant") terminated Plaintiff's employment. Id. ¶ 16. On that day Defendant, via its bank, issued an electronic transfer of funds from its account to Plaintiff's bank account in the full amount of all wages due, which was $26,401.50. Id. ¶ 18. The funds appeared in Plaintiff's account the next day, April 4. Id. ¶ 19. Defendant knew at the time it issued the electronic transfer that Plaintiff would not receive the funds until April 4. Doc. No. 5. On October 22, 2014, Plaintiff filed this lawsuit in Massachusetts Superior Court, Compl., and filed an amended complaint on October 30, 2014, Am. Compl. Defendant received service of the amended complaint on November 14, 2014. Defs.' Notice Rem. ¶ 3. Defendants filed a notice of removal on December 4, 2014, asserting diversity jurisdiction. Id.

1

Plaintiff claims a violation of the Massachusetts Wage Act, chapter 149, section 148 of the Massachusetts General Laws on his own behalf and on behalf of others similarly situated. Am. Compl. ¶ 2. Defendant has moved to dismiss. Defs.' Mot. Dismiss. Given that the foregoing facts appear undisputed, neither party has suggested it needs discovery to prepare its case and the case presents questions of law, the Court treats the parties' filings as cross-motions for judgment on the pleadings.

II. Statutory Requirement

The statute defines when employers must pay terminated employees: "any employee discharged from such employment shall be paid in full on the day of his discharge." Mass. Gen. Laws ch. 149, § 148. Statutory language must be interpreted "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language" and in consideration of the purpose of the "cause of its enactment." Bos. Police Patrolmen's Ass'n v. City of Bos., 761 N.E.2d 479, 481 (Mass. 2002) (citing O'Brien v. Dir. of the Div. of Emp't Sec'y, 472 N.E.2d 253, 258 (Mass. 1984)).

The purpose of the Massachusetts Wage Act is to ensure that employees receive prompt payment of wages, Wiedmann v. The Bradford Grp., Inc., 831 N.E.2d 304, 308 (Mass. 2005), and to "prevent the unreasonable detention of wages" by employers. Melia v. Zenhire, Inc., 967 N.E.2d 580, 587 (Mass. 2012); see also, Newton v. Comm'r of the Dep't of Youth Servs., 816 N.E.2d 993, 995 (Mass. App. Ct. 2004). The Act requires "that an employer expeditiously pay a terminated employee his full wages and similar compensation," Suominen v. Goodman Indust. Equity Mgmt. Grp., LLC, 941 N.E.2d 694, 705 (Mass. App. Ct. 2011), which "must" be paid in full on the day that the employee is terminated, Prozinski v. Ne. Real Estate Servs., 797 N.E.2d 415 (Mass. App. Ct. 2003).

2

The plain meaning of the language "paid in full on the day of his discharge" requires the employer to transfer control over the funds to the employee on the day of discharge. By selecting the word "paid," the past tense of "to pay," the Legislature required the completion of the act of payment, a requirement emphasized by the conditions on payment, the employer must make payment "in full" and do so "on the day" of discharge. Payment is, thus, incomplete until the recipient of the funds has some control over the funds. Several reasons support the foregoing plain language construction.

First, the limited case law applying this aspect of the statute has interpreted the language in this manner. The Superior Court of the Commonwealth, in a decision by now Chief Justice Gants, ruled that giving post-dated checks to a discharged employee on the date of discharge made the payment "tardy under the Act." Dobin v. CIOview Corp., No. 2001-00108, 2003 WL 22454602, at *8 (Mass. Supp. Oct. 29, 2003). Because the checks were post-dated, the plaintiff in Dobin, though in possession of the checks, did not have control over the funds.

Second, the context in which the statute applies supports requiring the transfer of control over the funds to the employee to occur on the day of discharge. The parties – employer and employee – are necessarily going their separate ways. The employer has severed its employment relationship with the employee and the Legislature has required the employer to complete that process by making payment that day. By requiring the employer to relinquish control of the funds to the employee, the statute ensures a clean final separation of the parties.

Third, under Massachusetts law generally, "payment" occurs when funds are "tendered and accepted." Goldman v. Peterson, 1997 Mass. App. Div. 189 (1997) (quoting Black's Law Dictionary (6th ed. 1990)). When paying by check, the Supreme Judicial Court of Massachusetts ("SJC") has ruled that payment is made "when the check is 'drawn on an account with sufficient

3

funds to cover' [it]…<u>and is delivered</u> to the payee." <u>First Nat'l Ins. Co. v. Commw.</u>, 461 N.E.2d 789, 792-93 (Mass. 1984) (citing <u>Terry v. Kemper Ins. Co.</u>, 456 N.E.2d 465, 468 (Mass. 1983)) (emphasis added). Due to the similar nature of transferring funds through the delivery of a check and through electronic transfer from one bank account to another, the SJC ruling applies equally here. An employer makes "payment" electronically when the funds are received in the employee's bank account.

Fourth, numerous Massachusetts statutes use the phrase "paid in full." <u>See</u>, <u>e.g.</u>, Mass. Gen. Laws. ch. 172, § 24 ("no dividends shall be declared or paid …until all such cumulative dividends shall have been paid in full"); ch. 62C, § 67 (an application for registration may be denied if tax payable "has not been paid in full"); ch. 164, § 1H(b)(2) ("the transition charge and its payment…shall be binding…until the bonds are paid in full"). Generally, the statutes use the phrase in the sense that paid in full means the recipient has received payment or control over the funds. Two statutes in particular bear mention. Chapter 65, section 22 provides that "[a]ny unpaid amount of the tax shown to be due on said return…shall be paid in full with the return," meaning that the Commissioner must receive payment with or at the time of receipt of the return, not later by electronic transfer initiated the day of the return. Mass. Gen. Laws ch. 65, § 22. Similarly, Chapter 140, section 114B authorizes certain creditors to collect a delinquency charge "on any payment not paid in full within fifteen days of its due date," plainly authorizing the delinquency charge when payment issues electronically within the time period but reaches the creditor after the time period. Mass. Gen. Laws ch. 140, § 114B.

Applying the foregoing interpretation to the undisputed facts set forth in Plaintiff's complaint establishes that Defendant violated the statute, subject to any defenses. Defendant did not turn over to the Plaintiff control over the funds on the day of his discharge, thus Plaintiff was

4

not paid in full on April 3rd. Certainly, defendant's payment method: (1) may have actually given Plaintiff access to the funds faster than handing him a check; (2) maybe preferred by many persons; and (3) appears, perhaps, commercially reasonable in a general sense. The statute permits electronic transfer payments, provided, the discharged employee is paid in full on the day of discharge. However, the payment method, as implemented in this case, does not comply with the statute, rather it is akin to placing cash in an overnight mail envelope knowing that delivery to the employee will not occur until the next day. This the statute, as written, does not permit.[1]

### III. Damages

Chapter 149, section 150 authorizes the Commonwealth's attorney general to bring either a civil or criminal action to enforce the mandates of section 148. Mass. Gen. Laws ch. 149, § 150. In such action "no defence [sic] for failure to pay as required, other than the attachment of such wages by trustee process or a valid assignment thereof or a valid set-off against the same, or the absence of the employee from his regular place of labor at the time of payment, or an actual tender to such employee at the time of payment of the wages so earned by him, shall be valid." Id. The section also provides that the "defendant shall not set up as a defence [sic] a payment of wages after the bringing of the complaint." Id.

The second paragraph of the section allows an aggrieved employee to bring a private civil action to enforce section 148, provided the employee first files a complaint with the attorney general and either 90 days elapses or the attorney general assents to the earlier filing of a private action by the employee. Id. The paragraph regarding the private action contains no provisions

---

[1] I note that Defendant has not contended that discovery would reveal information regarding the electronic transfer that would render it equivalent to a check, i.e., that upon initiation of the transfer, that somehow Plaintiff obtained some control over the funds prior to receipt of the funds the next day.

regarding defenses. It does though define the damage remedy: "An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees." Id.

Plaintiff reasons that the Defendant paid late, therefore it has established liability and for damages the Court "shall" award treble damages subject only to a possible setoff for the April 4 wage payment. The Court does not agree with Plaintiff's reasoning regarding damages. The structure of the section creates the private right of action as a derivation of the civil public action the Legislature authorized the attorney general to file – the employee can only file after initiating some contact with the attorney general. For this reason, the various provisions governing defenses to the attorney general's actions apply with equal force to private civil actions. Or, as now Chief Justice Gants ruled as a Justice of the Superior Court: "This Court can find no rational reason why the Legislature would have barred this defense [of payment] for actions brought by the Attorney General but permitted it for actions brought by the wage earner herself." Dobin, 2003 WL 22454602, at *8.

Thus, the statute prohibits an employer from defending a private action based upon payment of wages after the "bringing of the complaint," ch. 149, § 150, meaning that "an employer found in violation of the Wage Act is required to pay treble the amount of wages and benefits that had been unpaid at the time the complaint was brought; the employer may not reduce the amount by making payment after it learns of the complaint. The corollary to this interpretation is that an employer is not required to pay treble the lost wages and benefits if the wage and benefit payments were tardy but made before the complaint was brought." Dobin, 2003 WL 22454602, at *7. In that circumstance, Dobin held that the "'loss of wages and other

6

benefits'" is simply the interest foregone from the delay in payment, which would be trebled under the Act." Id.

No doubt Dobin was decided when the statute vested judges with the discretion to decide whether to award treble damages. Subsequently, in 2008, the Legislature made trebling of "lost wages and other benefits" mandatory. 2008 Mass. Acts ch. 532. Nonetheless, because the statute authorizes, albeit implicitly, a defense arising from a specific, tardy, wage payment made before the "bringing of the complaint" these wages, i.e. the tardy wages paid before the bringing of the complaint, are not "lost wages" within the meaning of the remedy statute.

Plaintiff relies heavily on two SJC cases. The first, Dixon, did not consider the question before this Court. It held "that the failure to pay unpaid wages [in the form of accrued vacation pay] cannot be mitigated by gratuitous, after-the-fact payments and that employees who have not received payment for unused vacation time to which they are entitled may seek relief" under the statute. Dixon v. City of Malden, 984 N.E.2d 261, 265 (Mass. 2013). Contrary to Plaintiff's suggestion, the SJC's statement that the defendant in Dixon "relies on several cases that do not have precedential value" does not constitute a repudiation of the reasoning of Dobin. Id. The SJC did not cite Dobin.

The two cases, Dixon and Dobin, are factually distinct. In Dobin, the wages due and owing were paid specifically, but late. Dobin, 2003 WL 22454602, at *2. In Dixon, the city never paid the accrued vacation time due and owing, but argued that gratuitous payments made in a hoped for effort to deter litigation qualified as the vacation payments. Dixon, 984 N.E.2d at 262. While the SJC did say that "a violation of the Wage Act results in damages" and that the statute imposes "'strict liability,'" it made these statements in the context of an employer failing to pay the wages due and owing. Id. at 266. This language plainly concerned the case then at

hand in which Plaintiff had not been paid for two sentences later the SJC ruled that "[i]n these circumstances, the plaintiff has incurred damages under the terms of the statute because the city did not pay his earned unused vacation time." Id. at 265-66.

Somers is similarly of no assistance to Plaintiff here. See Somers v. Converged Access, Inc., 911 N.E.2d 739 (Mass. 2009). Both Dixon and Somers establish firmly that the statute requires timely payments clearly denoted as payments for the wages at issue in order to qualify as payments under the statute. Dixon, 984 N.E.2d at 264-65; Somers, 911 N.E.2d at 749-50. Both forbid employers from reducing damage awards based on other different payments made by the employer. Dixon, 984 N.E.2d at 265; Somers, 911 N.E.2d at 750. These questions do not arise here, which concerns whether Plaintiff suffered "lost wages" under section 150 when the employer made full payment for all wages, made clear the payment was for that purpose, but did so one day late under the requirements of section 148.

That leaves the question of interest. While Dobin suggests it is available, in Plaintiff's supplemental filing, he appears to have disavowed any claim for interest arising from the one day delay in payment: "Nowhere does the Wage Act mention damages being the interest on the unpaid wages…The absence of any interest-only damages provision for late payments of wages…conclusively shows the legislature intended not to include such damages in the Wage Act…" Doc. No. 22 at 3-4.

Accordingly, Plaintiff is not entitled to trebled damages, lost wages or other benefits. The parties shall file a joint statement within ten days advising the Court (1) if any party believes further factual development might affect resolution of the issues before the Court and (2) any other matter requiring resolution prior to entry of judgment.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge